UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

POLYPACK, INC.,

       Plaintiff,

v.                                      Case No. 8:23-cv-318-SPF

NESTLÉ USA, INC.,

       Defendant.

_____/

## ORDER

Before the Court is Defendant Nestlé USA, Inc.'s ("Nestlé") Omnibus Motion in Limine (Doc. 108). Plaintiff Polypack, Inc. ("Polypack") filed a response in opposition to Nestlé's motion (Doc. 121). The Court heard oral argument on the motion during the final pretrial conference on April 10, 2025. Upon consideration, Nestlé's motion is GRANTED IN PART and DENIED IN PART.

### I. Background

This commercial dispute stems from a contractual agreement through which Polypack agreed to provide packaging equipment for a Nestlé facility in Illinois at which Nestlé produces Libby's® canned pumpkin products. Polypack initiated this suit seeking damages for breach of contract and breach of the implied covenant of good faith and fair dealing after Nestlé failed to make the final installment payment on the equipment and also failed to pay Polypack for service fees owed under a related service agreement (Doc. 18). Nestlé then filed a counterclaim seeking damages for breach of the equipment agreement and the service agreement, alleging that Polypack provided defective equipment and failed to achieve certain performance requirements detailed in the service agreement (Doc. 23).

## II.    Legal Standard

The Court has broad discretion in determining the admissibility of evidence.  *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998).  The purpose of a motion *in limine* is to give the trial judge notice of the movant's position to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial.  *Stewart v. Hooters of Am., Inc.*, No. 8:04–cv–40–T–17–MAP, 2007 WL 1752873 *1 (M.D. Fla. June 18, 2007).  Motions *in limine* are disfavored; if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context.  *Amegy Bank Nat. Ass'n v. DB Priv. Wealth Mortg., Ltd.*, No. 2:12-CV-243-FTM-38CM, 2014 WL 791505, at *1 (M.D. Fla. Feb. 24, 2014).  An order on a motion *in limine* remains subject to reconsideration by the court throughout the trial.  *Stewart*, 2007 WL 1752873, at *1 (citations omitted).

## III.    Discussion

Nestlé's omnibus motion brings six individual motions in limine.  The parties have since reached an agreement on the first, third, and sixth motions.  As a result, Nestlé's first, third, and sixth motions in limine are denied as moot.  The Court addresses the remaining motions in turn.

### a.    Second Motion in Limine – Service Agreement Invoices

In its second motion in limine, Nestlé requests that the Court exclude evidence of or reference to Polypack's "invoices under the Service Agreement or Polypack's contention that such invoices were not paid by Nestlé" (Doc. 108 at 9).  In support of this argument, Nestlé refers to the Court's order denying Polypack's motion for summary judgment with respect to its "claim" for breach of the Service Agreement because Polypack failed to plead a claim for

breach of the Service Agreement (Doc. 103 at 15). Thus, Nestlé argues that if Polypack cannot seek summary judgment on a claim it has not properly plead, it should not be permitted to adduce evidence at trial in support of that claim. In other words, because Polypack has no pending cause of action related to the Service Agreement, any unpaid invoices related to the Service Agreement are not relevant to Polypack's claim for breach of the Equipment Agreement. And even if they were relevant, any probative value the service invoices may have is outweighed by the unfair prejudice that would result from their admission at trial. Polypack responds that Nestlé withheld payment of Polypack's service invoices under the theory that it was entitled to do so under the Equipment Agreement. As a result, Polypack argues that if it prevails on its claim for breach of the Equipment Agreement at trial, the amounts owed on the unpaid service invoices will be recoverable as damages.

As an initial matter, the parties do not dispute that no invoices reflecting the unpaid service fees were produced in discovery and no invoices reflecting the unpaid service fees were included in either the joint trial exhibit list (Doc. 122-1) or Polypack's individual trial exhibit list (Doc. 122-2). Indeed, Polypack represents that these invoices do not exist at all and that it intends to establish these damages through testimony and other documentary evidence. As a result, Nestlé's motion to exclude "evidence regarding Polypack's invoices under the Service Agreement or Polypack's contention that such invoices were not paid by Nestlé" is granted.

This ruling will not, however, prohibit Polypack from introducing *other* evidence to establish that Nestlé set off unpaid service fees it owed to Polypack against the refund it believed Polypack owed to Nestlé under the Equipment Agreement. Throughout this litigation, Nestlé has maintained that it was entitled to withhold service payments allegedly owed to Polypack as a set off for the amounts Polypack owed under the Equipment

Agreement (*See, e.g.*, Doc. 66 at 25; Doc. 72 at 18 n.17).  Paragraph 8 of the Equipment

Agreement's Terms and Conditions provides, in relevant part:

> Buyer will not be deemed to have accepted the Equipment, and the final payment will not be due and owing to Seller, unless and until the Equipment successfully completes final acceptance testing . . . .  Notwithstanding anything to the contrary, . . . if the Equipment is unable to successfully complete Final Acceptance Testing within thirty (30) days after the date Final Acceptance Testing begins, in each case due to any uncorrected Equipment defect or non-conformity, then Buyer may, . . . (iii) **terminate the Agreement without penalty, return the Equipment to Seller at Seller's sole cost and expense, and receive a refund of all amounts paid to Seller as of the date of termination**.

(Doc. 66-5 at ¶ 8 (emphasis added)).  The Equipment Purchase Order (Doc. 66-6) and the

Service Purchase Order (Doc. 72-7) both provide that "[w]ithout prejudice to any other right

or remedy, [Nestlé] reserves the right to set off any amount owing at any time from [Polypack]

to [Nestlé] against any amount payable by [Nestlé] to [Polypack]."  (Doc. 66-6 at ¶ 5; Doc.

72-7 at ¶ 5).  Thus, because Nestlé maintains that it was owed a refund for "all amounts paid"

under the Equipment Agreement's Terms and Conditions, it was entitled to set off the service

fees.  And during oral argument on this motion, Nestlé stated that the decision not to pay

Polypack's service fees "sounded in set off" (Doc. 125 at 20:50–55).  In particular, "Nestlé's

decision is that what was owed to Polypack under the Service Agreement paled in comparison

to what was owed to Nestlé under the Equipment Agreement, and that under the rights of set

off, which is permitted under the Equipment Agreement, it would be withholding those

payments until this adjudication."  (*Id.* at 22:15–34)  It will be for the jury to decide whether

Nestlé is entitled to a refund of all amounts it paid to Polypack pursuant to the Equipment

Agreement, and whether a partial refund was made by way of set off.

### b. Fourth Motion in Limine – Employee Performance Reviews

Next, Nestlé moves to prevent Polypack from presenting evidence or eliciting testimony regarding annual Nestlé employee performance reviews. Nestlé anticipates that Polypack will attempt to distract the jury with unjustified attacks on the character and performance of Nestlé's employees, in part by questioning Nestlé witnesses on their annual performance reviews. During the deposition of one of Nestlé's employees, Polypack elicited testimony regarding the employee's 2023 performance evaluation.[1] Polypack asked the employee if Nestlé assessed any blame or fault against him with respect to the Polypack project, and the employee answered in the negative (Doc. 108-2 at 42:23–43:18). The following exchange then occurred:

> Q:    During your performance evaluations, were you given any suggestions for improving your performance in the future based on what was learned at the line 3 project at Morton?
>
> A:    Yes.
>
> Q:    What suggestions were made?
>
> A:    I believe the suggestions that were made is that, as I took them, that I could be more reserved in how I deal with vendors and allow others to step forward to deal with specific issues.

(*Id.* at 48:02–12). The employee then noted that, as part of his self-evaluation and professional development goals, he chose to pursue certain training programs provided by Nestlé:

> Q:    As part of your evaluation or your performance evaluation, were you directed to take any in-house training programs?
>
> A:    No, I don't think I was directed to take any in-house training programs.
>
> Q:    Were any recommended?

---

[1] The employee's 2023 performance evaluation was conducted the year after Nestlé sent Polypack its notice of breach (Doc. 108 at 14).

A:    No, I think that I went out and identified some additional trainings that I could take as improvement.

[ . . . ]

Q:    What additional training programs did you pursue?

A:    I think there was a few, but I don't remember specifically. Like one of them -- I believe one of them was about helping others feel more included.

[ . . . ]

Q:    And you made this decision based on your performance evaluation and the suggestions that were given to you during that performance evaluation?

A:    Yes, that was part of it.

Q:    Now, I think you told me that you weren't directed to take these programs; is that correct?

A:    That's correct.

Q:    Was it recommended that you take these programs, that you pursue these training programs?

A:    No, this was -- we do set up personal development goals every year, and we self-identify where those opportunities are for us to further develop, and this was one of the areas that I identified and the specific trainings that I want to take for that particular development goal.

(*Id.* at 49:18–51:10).

Nestlé argues that this evidence is inadmissible because: (1) it qualifies as a subsequent remedial measure and is therefore inadmissible under Federal Rule of Evidence 407; (2) it is not relevant and is therefore inadmissible under Federal Rule of Evidence 402; and (3) its probative value is outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury and is therefore inadmissible under Federal Rule of Evidence 403.

Under Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction."  This rule has two justifications.  First, subsequent remedial measures generally are of limited probative value as an admission of fault; and, second, there is a strong "social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety."  *See* Fed. R. Evid. 407 advisory committee's notes.  Rule 407 does not, however, bar *any* use of subsequent remedial measures—it bars the use of subsequent remedial measures for purposes of establishing culpable conduct.  Indeed, the Rule provides that courts may admit this evidence for another purpose, such as impeachment.  Fed. R. Evid. 407.  The Eleventh Circuit has cautioned, however, that "[c]are must be taken to insure that Rule 407's impeachment exception is not used merely 'as a subterfuge to prove negligence or culpability of the defendant.'"  *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1567–68 (11th Cir. 1991) (quoting *Petree v. Victor Fluid Power, Inc.*, 887 F.2d 34, 39 (3d. Cir. 1989)).

Nestlé argues that an evaluation prepared to improve performance or prevent future harm constitutes a subsequent remedial measure that should be precluded under Rule 407.  In support of this argument, Nestlé cites to *Williams v. Asplundh Tree Expert Co.*, No. 3:05-cv-479-J-33MCR, 2006 WL 2868923, at *5 (M.D. Fla. Oct. 6, 2006), in which the court held that an internal investigation report containing a section recommending corrective action for an employee after an incident was inadmissible under Rule 407.  The *Williams* court expressly contrasted reports "prepared for the purpose of improving procedures to prevent future harms," which are inadmissible subsequent remedial measures, with reports "prepared for a

purpose other than remedying a problem," which are not excluded by Rule 407.  *Id.*  The Court then stated that portions of otherwise admissible reports that propose remedies must still be excluded.  *Id.*

In response, Polypack relies on *IVC US, Inc. v. Linden Bulk Transp. SW, LLC*, No. 4:15-cv-120-HLM, 2017 WL 5203055, at *7 (N.D. Ga. Apr. 4, 2017) to argue that evidence related to the employee's annual review does not qualify as a subsequent remedial measure.  In *IVC*, the employee performance appraisal stated the following:

> Bobby is a good man and a very good [Plaintiff] associate who works hard and is trustworthy. Bobby did make a very major mistake this year that was very costly. He took it very hard and personal. It took about a month to recover from that emotionally for him. All though [sic] Bobby was not 100% at fault he still took this very hard. He is on the path and doing very well and will continue to be a good [Plaintiff] Associate.

*Id.* at *8.  The Court then explained that this report did not qualify as a subsequent remedial measure because the employee was not fired, the appraisal occurred as part of the employer's regularly scheduled process (and not in response to the incident), and the appraisal did not set forth an action plan or purport to establish any changes in policies or procedures.  *Id.* at *9.

Here, as in *IVC*, the Nestlé employee was not fired, the annual review occurred as part of Nestlé's regularly scheduled process (and not specifically in response to the events underlying this litigation), and the review did not establish any changes in Nestlé's policies or procedures.  The review did, however, "set forth an action plan."  The annual review included suggestions for improving the employee's performance in the future "based on what was learned" during the Polypack project (Doc. 108-2 at 48:02–18).  So while the employee's evaluation was "prepared for a purpose other than remedying a problem," it nonetheless proposed a remedy.  *Williams*, 2006 WL 2868923, at *5.  Thus, to the extent Polypack intends to refer to these forward-facing recommendations to establish Nestlé's culpability, the Court

finds that the proposed remedies—namely, the recommendation that the employee involve the team when responding to vendors and the employee's independent decision to pursue additional trainings—constitute inadmissible subsequent remedial measures.

The Court's ruling, however, does not limit the use of this information for impeachment purposes. "[M]ost courts and commentators counsel caution in applying this exception, which may well possess the capacity to engulf the rule." *Wilkinson*, 920 F.2d at 1567. For example, "evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a defendant's testimony that he was using due care at the time of the accident, if this counted as 'impeachment' the exception would swallow the rule." *Id.* at 1568 (quoting *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 469 (7th Cir. 1984)). Thus, to properly consider the testimony and the purpose for which Polypack intends to offer it, the Court will defer ruling on whether the evidence related to the employee's annual review may be used for impeachment. Before Polypack presents such evidence, it should request to be heard outside the presence of the jury so the Court may determine whether the evidence is proper for impeachment.

Nestlé's fourth motion in limine is granted in part and denied in part as set forth above.

### c. Fifth Motion in Limine – Character Evidence

In its fifth motion in limine, Nestlé requests that the Court prevent Polypack from introducing evidence or testimony regarding the perceived personality traits, propensities, or perceived attitude of Nestlé employees as improper character evidence barred by Rule 404(a). In particular, Nestlé highlights deposition testimony from one of Polypack's corporate representatives stating that Polypack's workforce was impacted by a particular Nestlé employee's "abusive" conduct (Doc. 108-3 at 176:01–25). Because Polypack also stated that

this employee's conduct did not impact the performance of the Equipment, Nestlé also argues that this evidence is not relevant and, therefore, inadmissible under Rule 401. Finally, Nestlé argues that, even if this character evidence is relevant, it should be excluded because its probative value is far outweighed by unfair prejudice. Polypack responds by arguing that this evidence is admissible under Rule 608(b) to impeach Nestlé witnesses if they place character for truthfulness at issue by testifying that they "listened to, considered, and ultimately rejected Polypack's recommendations" regarding the consumables. Thus, Polypack alleges that this would render Nestlé's conduct in responding to those recommendations relevant.

Generally, if character evidence "is introduced for the purpose of showing that a person acted in accordance with his character on a given occasion, then the evidence is inadmissible unless it falls within one of the exceptions noted in Rule 404." *Reyes v. Mo. Pac. R. Co.*, 589 F.2d 791, 794 (5th Cir. 1979). Further, "evidence of other crimes, wrongs, or acts is inadmissible character evidence that may not be used to prove a person's propensity to act." *United States v. Williams*, 527 F.3d 1235, 1247 (11th Cir. 2008) (citing Fed. R. Evid. 404). Rule 404(a)(3) provides an exception to the general bar on character evidence applicable in civil cases by permitting the admission of evidence of a witness's character under Rule 608. Fed. R. Evid. 404(a)(3). Rule 608(b), in turn, provides that while "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support a witness's character for truthfulness," Fed. R. Evid. 608(b), "'the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of ... the witness.'" *United States v. Ochoa*, 941 F.3d 1074, 1094 (11th Cir. 2019) (quoting Fed. R. Evid. 608(b)).

Here, the Court finds that evidence of how Nestlé employees responded after receiving recommendations regarding consumables is admissible. This is evidence directly relevant to the facts of this case, not extrinsic character evidence. [2] To the extent Polypack intends to make broad, general allegations of abusive conduct, however, the Court finds that such evidence should be excluded under Rule 403 because any probative value is outweighed by a danger of unfair prejudice. Describing the general behavior of Nestlé employees as "abusive" runs the risk of "distracting the jury from their central obligation to decide the issue before them." *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 813 (11th Cir. 2020).

Nestlé's fifth motion in limine is therefore granted in part to the limited extent that Polypack may not introduce testimony or evidence broadly describing Nestlé employees as abusive. This ruling does not preclude Polypack from introducing evidence of how Nestlé employees responded to their consumable recommendations. And to the extent other evidence of abusive conduct becomes relevant at trial, Polypack may proffer this outside of the presence of the jury, as this ruling is subject to change based upon the court's exposure to evidence at trial. *Stewart*, 2007 WL 1752873, at *1.

## IV. Conclusion

Accordingly, it is hereby **ORDERED**:

(1) Nestlé USA, Inc.'s Omnibus Motion in Limine (Doc. 108) is GRANTED IN PART and DENIED IN PART as follows:

---

[2] It does not describe an employee as abusive to establish that the employee acted in an abusive manner on another occasion as prohibited by Rule 404(a)(1). Similarly, it does not involve the introduction of unrelated specific instances of abusive conduct to show that a Nestlé employee acted in an abusive manner on another occasion as prohibited by Rule 404(b)(1). And because it is not character evidence, it necessarily doesn't fall under the exception provided by Rule 608(b).

a. Nestlé's first, third, and sixth motions in limine are denied as moot.

b. Nestlé's second motion in limine is granted.

c. Nestlé's fourth and fifth motions in limine are granted in part and denied in part as set forth above.

**ORDERED** in Tampa, Florida on April 18, 2025.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE